Haynes, J.
Tbe petition in error in this case is filed for the purpose of reversing the judgment of the court of common pleas in an action that was brought in that court wherein Emma B. Green was plaintiff,and Benjamin Baitz was defendant, with other parties at that time.
The question that is submitted t<? us arises upon the charge of the court, and is á question affecting the rights and liabiliites of Raitz, as chief of-the police force, oras an officer charged with the preservation of the peace, order and law of the city of Toledo.
The plaintiff, in the petition below, stated that she was arrested by the order of Raitz without any affidavit being filed or any warrant issued,, and was imprisoned for the space of fifty-six hours in the city prison. The testimony shows this state of facts: that parties on the limits of the city were complaining, and did complain, on the morning of the 7th *456 of July, 1894, which was Saturday, and it came from two or three different sources, that buildings of at least three different persons had been broken into and relieved of some of their contents, which consisted of chickens. Raitz sent two of his officers to make an investigation. They went out into the neighborhood, and commenced their researches, and discovered such facts as that they charged this woman, her husband and daughter, with having been guilty of stealing the chickens. Both Mr. and Mrs. Green offered to come to town with the officers, and did come with them, and perhaps the daughter. After they arrived here, they went into the office of the chief, and he had a long conversation with them, and the result of that investigation was that sometime during the afternoon, perhaps one or two o’clock, he ordered them to be locked up, and then himself went out to the premises during the afternoon or early in the evening, and made further investigations, and found feathers and entrails of chickens buried, and ascertained from different sources that these parties had not only had chickens in their possession, but had been selling them to hotels in this city. The next morning, Sunday, on his arrival at the station, he was informed that Mrs. Green wanted to see him. He accordingly directed that she be brought up into the office of the chief. Mrs. Green then told Raitz, the chief, that she never had been in any trouble before,and was of a respectable family; and she proceeded to state to him that she and her husband, on the night in question, started from a residence in North Toledo, got into the western part of the city, where they stopped. She and her daughter remained in the wagon for quite a while, and her husband went away, and came back, heavily laden, in his arms and across his back, with chickens, all dead, They were loaded into the wagon, and taken back to their residence in North Toledo, ana dressed that night, and the next morning they were brought to town, and sold. It was in evidence that they owned no *457 chickens, and never kept any themselves. There was other evidence of facts which had been brought before Raitz, with regard to where the heads of the chickens had been found. Upon that state of facts, during the day,the chief sent word to the parties to whom the chickens belonged which had been stolen, to come in early on Monday morning to make their affidavits, so the cases could be heard in police court that morning. On that morning, the 9th of July, about 7 o'clock, the chief received information that there was a riot in progress somewhere in the neighborhood of the Air Line Junction; that matters were very serious, and demanded his immediate attention. He thereupon called out certain of the reserves, and started for the Junction, and remained there during the whole of that day, or at least until about 5 o’clock. He was engaged during the balance of the week out there in the line of his official duties, with the force under his command, in preserving order and maintaining the laws. When he returned on Monday afternoon, at 5 o’clock, he was told that a writ of habeas corpus had been left for him to produce the body of these persons before the probate judge. Raitz found that the officers who had charge of the prison had taken them over to the probate court. He started for the probate judge’s office, and arrived there just as the Greens were being discharged. The chief had none of his officers with him who had made the investigations into the charges upon which the Greens had been arrested. They were engaged in the line of their- duties at Air Line ‘Junction. So the prisoners were discharged. Thereupon Emma B. Green commenced this action against the chief. The case proceeded to trial. Testimony was given setting out all these facts, and the court procéeded to give his charge, as follows:
“It appears in the evidence, uncontradicted,that the plain *458 tiff here was brought to the station house in the afternoon of Saturday. The n.ext morning being Sunday, there could be no session of the police court on that morning, but in the absence of proof to the contrary, it will be presumed that there was such a session on the next Monday morning; and the defendants, under this rule, were only authorized to detain the plaintiff from the time on Saturday when she was at the station house, whether brought there by the officers Nichter and Ashby, or whether there voluntarily, until the next session of the police court.”
Referring to some rules of the police board for the government of the police force:
“I say to you, as a matter of law, that her detention after that time without warrant, and without producing her to the court upon Monday morning — not producing her there until after she had been released by the probate court — was without warrant of law and illegal, and that, too, whether she was in the first place properly arrested or not, or whether she was before that time legally or illegally detained, under the rules of law which I have given you, and upon the evidence before you. And the plaintiff having been thus arrested without warrant, I say to you further, that the burden of proof is upon the defendants to show such a state of facts as justified the officer^ in making the arrest without the warrant, and also that they did not detain the arrested party an unreasonable length of time before the issuing of a legal warrant; and whether the circumstances stated afforded the defendants reasonable grounds to suppose that the plaintiff had committed a felony, or whether the circumstances justified the detention of the plaintiff; and for how long a time it justified the detention, are to be judged by you, upon the evidence; except as I say, that under the rules of law which I have given you, the defendants, or either of them, were not justified in holding the plaintiff in custody without a warrant,after the session of the court upon Monday morning. * * *
‘‘Defendant Raitz, as chief of .police, admits that he did arrest her at the station house, and that she was detained under his orders until released on the following Monday, and that he detained her without warrant. You will, there *459 fore, for these reasons, find that, so far as he is concerned, this arrest was illegal, and that this detention was illegal. But if you do not find that she was arrested by Nicheter and Ashby, and that they did not, as I say, participate in her subsequent arrest, or detention, then they or either of them would not be liable; but if, while they were together and acting in concert either arrested her, the other would be equally liable with the one with whom he was acting in concert,”
With all respect to the learned court who delivered this charge, we are unable to agree with him in respect to the correctness of it. The statute provides, and to that he did refer the jury, section 2179, that:
‘‘A sheriff, deputy sheriff, constable, marshal or deputy marshal, watchman, or police officer, shall arrest and detain any person found violating an;y law of this state, or any legal ordinance of a city or village, until a legal warrant can be obtained.”
It is conceded that so far as the officer was concerned, , these persons were not then found by him committing an offense.
‘‘Sec. 7130. When a felony has been committed, any person may, without warrant, arrest another who he believes, and has reasonable cause to believe, is guilty of the offense, and may detain him until a legal warrant can be obtained.”
It is sufficient to say, under the facts as detailed by the witnesses, if the facts were true that an offense had been committed, that the officer was justified in acting under this section of the statute, if he kept himself within its proper limits. He was arresting a person whom he believed, and had reasonable cause to believe, was guilty of the offense, and he could detain him until a legal warrant could be obtained. The police court is a court of record, has authority to hear and determine all offenses against the ordinances of the city; in certain cases it has the right to hear and determine finally offenses against the law of the state; and it has *460 the same right as a magistrate to hear and determine as an examining magistrate whether a felony has been committed, and to bind the party oyer to the proper court for a hearing of the case, It has a judge and prosecuting attorney, who is required to prosecute all actions before that court for all offenses. Such being the condition of affairs, the chief, on Saturday, upon what he conceived to be sufficient evidence, and which, we have no doubt, was sufficient evidence to authorize him, ordered this woman to be detained and brought before the court on Monday. Under the charge of the court no real objection was taken to that. He was acting, as the court finds, within the proper limits of his authority. On Monday morning the court would be in session, and the chief had then taken steps to have these respective parties present to prosecute that suit — to make affidavits, which, we suppose, were all to be prepared by the prosecuting attorney; or, if it was a misdemeanor, it might be brought by an information. In the line of his duty, the officer is called away upon matters of the gravest importance; but he has put in operation the machinery of the law; he has the person detained, he is to have the witnesses here, he knows the city prosecutor and the duties he has to perform. We think he had a right to suppose that those duties would be performed in the due and ordinary course of things, and that he was not bound to leave these other and more weighty matters, and remain here for the purpose of prosecuting this suit, or to see that the affidavits were filed that morning. At any rate we are clearly of the opinion that the question should have been submitted to the jury, on all those facts, to determine whether he had been guilty of unreasonable delay in making these affidavits, or of any unreasonable delay in the omission of any duty which he was called upon to perform in regard to this matter, and let the jury say whether he had been thus guilty; but the court proceeded to charge,as a matter of law, that inasmuch as he did not, even *461 under these circumstances before the court, file the affidavit that morning, so that the person would from that time have been detained on a warrant, that he was guilty of unlawfully imprisoning these persons; in other words, .he was guilty of unreasonable delay, which rendered him liable to a prosecution for unlawful imprisonment. We do not agree with the court in the view it took of the law in regard to the case. For this reason we shall reverse the judgment of the court, set aside the verdict, and remand the case to the court of common pleas for a new trial.
F. M. Sala, for Plaintiff in Error.
J. A. Jones and M. B. Lemmon, for Defendant in Error.